AO 106 (Rev 04/10) Application for a Search Warrant    AUTHORIZED AND APPROVED DATE  /s/ Laney Ellis 8-22-2025

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of  )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )      Case No. M-25- 511 -SM
A blue Apple iPhone, model unknown, IMEI unknown seized from  )
Kemari Bruner and currently in custody of ATF located  )
901 NE 122nd St., Oklahoma City, Oklahoma  )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See Attachment A.**

located in the **Western** District of **Oklahoma**, there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(3) | Possession of a firearm by a Drug User |
| 18 U.S.C. § 924(c) | Possession of Firearm During a Drug Trafficking Crime |
| 21 U.S.C. § 841(a)(1) | Possession of Marijuana, a Schedule I Controlled Substance, with Intent to Distribute |

The application is based on these facts:

**See attached Affidavit.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

David Moore, Special Agent, ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: 08/27/2025

_____
Judge's signature

SUZANNE MITCHELL, U.S. Magistrate Judge
Printed name and title

City and state: Oklahoma City, Oklahoma

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) BLUE APPLE IPHONE, MODEL UNKNOWN, IMEI UNKNOWN; AND (2) LIGHT PURPLE APPLE IPHONE, MODEL UNKNOWN, IMEI UNKNOWN, SEIZED FROM THE POSSESSION OF KEMARI BRUNER CURRENTLY IN THE CUSTODY OF ATF LOCATED AT 901 NE 122ND ST. OKLAHOMA CITY, OKLAHOMA | Case No. M-25- 511 - SM |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, David Moore, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so since March of 2022. Prior to Employment with ATF, I was employed by the Oklahoma Department of Corrections. I have been employed in law enforcement for over twelve years. I am a graduate of the Federal Law Enforcement Training

Center and the ATF National Academy; because of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws. I am currently assigned to the Oklahoma City Field Office and am charged with investigating violations of Federal Law, including violations of the Gun Control Act of 1968, as amended in Title 18, United States Code, Sections 921 et seq. As a federal agent, I am authorized to investigate violations of United States laws, to execute warrants, and make arrests under the authority of the United States.

3. This affidavit is based on my personal knowledge and on information I have learned, either directly or indirectly, from witnesses, records, and other law enforcement officers and agents. Furthermore, this affidavit is intended to show sufficient probable cause exists for the requested warrant but does not set forth all my knowledge about this matter. As such, I have not included each and every fact known to me concerning this investigation, but rather, included only those facts necessary to show probable cause.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is one (1) blue Apple iPhone, model unknown and IMEI unknown ("**Device 1**") and one (1) light purple Apple iPhone model unknown **("Device 2"),** seized from the possession of Kemari BRUNER (BRUNER), (together the "**Devices**"). The **Devices** are currently located at the ATF Oklahoma City Field Office, located at 901 NE 122nd Street, Oklahoma City, Oklahoma, in the Western

District of Oklahoma.

5. The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

6. Based on the facts set forth in this Affidavit, there is probable cause to believe violations of Title 18, United States Code, Section 922(g)(3), unlawful possession of a firearm by a drug user, Title 21, United States Code, Section 841(a)(1), possession of marijuana, a Schedule I controlled substance, with intent to distribute, and Title 18, United States Code, Section 924(c), possession of a firearm during a drug trafficking, was committed by BRUNER and evidence, fruits, and instrumentalities of the offenses are located on the **Devices**.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

8. On June 13, 2025, at approximately 4:35 PM, an officer with the Edmond Police Department (EPD) was on patrol near Danforth and Boulevard in the city of Edmond, Oklahoma when he observed a black Tesla Model 3 bearing Oklahoma tag QQX745 exceeding the posted speed limit. The officer activated his emergency equipment, and the driver, later identified as BRUNER, stopped the

vehicle near Boulevard and Edwards in Edmond, Oklahoma.

9. The officer approached the vehicle to speak with BRUNER, who was the sole occupant and driver of the vehicle. While speaking with BRUNER, he observed the smell of marijuana emanating from inside the vehicle and asked BRUNER if he was in possession of a medical marijuana card. BRUNER denied he possessed such a card and indicated the smell was coming from burnt marijuana and marijuana cigarette remnants in an ashtray in the vehicle.

10. The officer directed BRUNER to exit the vehicle. After BRUNER exited the vehicle, the officer conducted a probable cause search of the vehicle. During the search of the vehicle, the officer located a large bag of marijuana with a total package weight of 282 grams, on the rear passenger floorboard, and a reusable black shopping tote in the right rear passenger seat that contained multiple individual resealable bags with $100 bill designs on the outside. One of the resealable bags contained suspected marijuana. A Nark II test of the suspected marijuana was later completed with a presumptive positive result for the presence of marijuana.

11. BRUNER was subsequently arrested. During the search of BRUNER's person, incident to his arrest, the officer located a large quantity of cash that was later determined to be $1,030.00 in BRUNER's front right pocket, and another resealable bag with $100 bill designs on the outside that contained four oxycodone pills.

12. The officer continued to search the vehicle and the reusable black shopping tote he previously located. During a search of the black tote, he found an additional 45 empty individual resealable bags with $100 bill designs on the outside,

42 of which were empty and three of which contained marijuana. A digital scale was also located inside the tote. A green colored backpack was located in the back passenger seat that contained marijuana bud and multiple calibers of loose ammunition.

13. Inside the glove compartment, two chamber and magazine-loaded firearms were located, one Glock, model 43X, 9mm pistol bearing serial number BPGL174 with 9mm bullets that were magazine-loaded, and one Glock, model 20, 10mm pistol bearing serial number TER586 with multiple 10mm bullets that were magazine-loaded.

14. The officer noted marijuana buds located throughout the vehicle. The total package weight for the five resealable bags with $100 bill designs on the outside that contained marijuana was 17 grams.

15. During a post-*Miranda* interview, BRUNER admitted to buying and reselling marijuana. BRUNER indicated he sold the marijuana baggies for $5 or $10. BRUNER also told the officers the number for his marijuana supplier was located on **Devices**.

16. On June 18, 2025, Oklahoma County District Judge Susan Stallings issued a warrant for BRUNER based on probable cause that he violated multiple Oklahoma State Statues including Title 21, Section 652(B), using a vehicle to facility a shooting(drive-by); Title 21, Section 652(C), assault and battery with a deadly weapon; Title 21, Section 1403, arson in the third degree; and Title 21, Section 454, destroying evidence. The warrant originated from an incident that occurred within

the Western District of Oklahoma on May 5, 2025.

17. On June 20, 2025, a Detective with the Oklahoma City Police Department (OCPD) interviewed BRUNER. During the interview, BRUNER indicated he was a regular user of marijuana, specifically indicating he regularly consumed marijuana one to two times a day. Furthermore, BRUNER indicated he used marijuana prior to the incident that occurred on May 5, 2025.

18. Based on my training and experience, cellular telephones are frequently used to communicate drug transactions, set up meeting locations to purchase or sell narcotics through drug trafficking, as well as capture photographs of narcotics and associated firearms. I also know persons who use recreational narcotics frequently document their use either alone or with other persons. Furthermore, I believe the cellular phones belonging to BRUNER will contain messages, images, social media applications, and personal dominion and control items which will assist in this illegal narcotics investigation and assist identify unknown coconspirators and other parties who are engaged in the illegal trafficking of drugs.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals

through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital

7

cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another
location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite

repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

20. Based on my training, experience, research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/, I know the **Devices** have the capabilities allowing them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices, such as the Devices, can store information for long periods of time. Similarly, things viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

22. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence establishing how the Devices were used, the purpose of use, who used it, and when it was used. There is probable cause to believe this forensic electronic evidence is located on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from

  a word processing file Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

 b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

 c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Back of Devices** consistent with the warrant.



**Front of Devices**



23. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## **CONCLUSION**

24.     Based on the above information, there is probable cause to believe violations of Title 18, United States Code, Section 922(g)(3), unlawful possession of a firearm by a drug user, Title 21, United States Code, Section 841(a)(1), possession of marijuana, a Schedule I controlled substance, with intent to distribute, and Title 18, United States Code, Section 924(c), and evidence, fruits, and instrumentalities of these offenses are located on the **Devices**. Therefore, I respectfully request this Court issue a search warrant for the **Devices**, described in Attachment A, authorizing the seizure of the items described in Attachment B.

_____
David Moore
Special Agent (SA)
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and Sworn to before me this __27th__ day of August, 2025.

_____
SUZANNE MITCHELL
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is one (1) blue Apple iPhone, model unknown and IMEI unknown ("**Device 1**") and one (1) light purple Apple iPhone model unknown **("Device 2")**, seized from the possession of Kemari BRUNER (BRUNER), (together the "**Devices**"). The **Devices** are currently located at the ATF Oklahoma City Field Office, located at 901 NE 122nd Street, Oklahoma City, Oklahoma, in the Western District of Oklahoma. Photos of the **Devices** are below:

**Back of Devices**



**Front of Devices**



This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B

1. All records on the **Devices** described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(3), 18 U.S.C. § 841(a)(1), and 18 U.S.C. 924(c) involving BRUNER including but not limited to:

   a. Phone directory and/or contact lists of customers, co-conspirators, suppliers, and associates involved in narcotics distribution or firearms possession, and related identifying information including names, nicknames, addresses, phone numbers, email addresses, and social media identifiers.

   b. Communications and evidence of communications, including but not limited to call logs, voicemails, text messages, multimedia messages, emails, and messages sent through applications (e.g., WhatsApp, Signal, Telegram, Facebook Messenger, Instagram, Snapchat), between the user of the **Devices** and customers, suppliers, or co-conspirators.

   c. Any communications referencing the acquisition, use, possession, or sale of firearms, narcotics, or proceeds from such transactions.

   d. Information regarding the types, amounts, prices, dates, times, and places of marijuana sales or firearm possession in connection with drug distribution.

   e. Photographs, videos, or other media depicting controlled substances, firearms, ammunition, packaging materials, scales, cash, or narcotics paraphernalia.

f. Ledgers, pay/owe sheets, notes, or other documentation of drug debts, transactions, or firearm acquisition in furtherance of drug trafficking.

g. Any information related to sources of drugs or firearms, including names, addresses, phone numbers, or other identifying information.

h. GPS coordinates, location information, cell-site data, travel routes, and mapping application history showing movements for the purpose of obtaining, delivering, or distributing narcotics and/or firearms.

i. Records reflecting the schedule or travel of the user, including but not limited to location history, calendar entries, and stored travel itineraries.

j. Bank records, checks, credit card bills, account information, money transfer records, cryptocurrency wallet data, and other financial records relating to the proceeds of drug trafficking or the acquisition of firearms.

k. Evidence identifying the person(s) who used or owned the **Devices** at the relevant times, such as saved usernames and passwords, account information, email accounts, photographs or videos of the user, documents, and browsing history.

l. **Devices** identifiers (IMEI, IMSI, SIM card data) to establish control of the **Devices**.

m. Applications, settings, or other evidence showing attempts to delete, encrypt, or otherwise conceal communications or media related to drug trafficking or firearm possession.

n. Any other records, evidence, fruits, or instrumentalities tending to show

the commission of the above-listed offenses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created, stored, or maintained. This includes, but is not limited to, any form of computer or electronic storage such as flash memory, SIM cards, SD cards, or other storage media; cloud-based storage associated with the Device; and any photographic, video, or audio form.